UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

TYKESIA ANDERSON,
on behalf of R.L.B., a minor child                                                PLAINTIFF

V.                          No. 2:20-CV-133-JTR

COMMISSIONER of
SOCIAL SECURITY ADMINISTRATION                                     DEFENDANT

## ORDER

**I.   Introduction:**

On May 23, 2017, Plaintiff, Tykesia Anderson ("Anderson"), applied for childhood supplemental security income benefits on behalf of her minor child, R.L.B. (Tr. at 10). Anderson alleged that R.L.B.'s disability began on November 20, 2014, R.L.B.'s date of birth. (Tr. at 10-13). After conducting a hearing, the Administrative Law Judge ("ALJ") denied Anderson's application. (Tr. at 20). The Appeals Council declined to review the ALJ's decision (Tr. at 1), so the ALJ's decision now stands as the final decision of the Commissioner, and Anderson has requested judicial review.

For the reasons stated below, the Court [1] affirms the decision of the Commissioner.

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge. (Doc. No. 4).

## II. The Commissioner's Decision:

For minor child disability cases, an ALJ must follow a three-step sequential evaluation. Under this framework, the ALJ is required to first determine if the minor is engaging in substantial gainful activity. 20 C.F.R. § 416.924. Next, the ALJ must decide if the impairment, or combination of impairments, is severe. *Id*. Finally, the ALJ must determine if the Plaintiff has an impairment that meets, medically equals, or functionally equals a listed impairment. *Id*.

For medical equivalence, the ALJ refers to the Child Listing of Impairments in Disability Evaluation. 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. This is an index of medical conditions and the signs or symptoms required for a minor to meet a Listing.

For functional equivalence, a minor has met a Listing if her impairment or combination of impairments results in a "marked" limitation in two domains of functioning, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926. The six domains of functioning are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Id*.

The ALJ in this case found that R.L.B. had not engaged in substantial gainful activity since the application date of May 23, 2017.[2] (Tr. at 13). He next determined that she had the following severe impairments: asthma, developmental delay, impulse control/conduct disorder.[3] *Id*.

The ALJ next concluded that R.L.B. did not meet or medically equal a Listing. *Id*. Finally, he determined that R.L.B. did not have an impairment that functionally equaled the severity of the Listings; that is, he concluded that R.L.B. did not have severe impairments that resulted in two marked limitations or one extreme limitation in the six functional domains. (Tr. at 13-20). He found that: 1) R.L.B. had a less than marked limitation in acquiring or using information; 2) R.L.B. had a less than marked limitation in attending and completing tasks; 3) R.L.B. had a less than marked limitation in interacting and relating with others; 4) R.L.B. had no limitation in moving about and manipulating objects; 5) R.L.B. had a less than marked limitation in the ability to care for herself; and 6) R.L.B. had a less than marked limitation in health and physical well-being. *Id*. Therefore, the ALJ determined that

---

[2] For supplemental security income cases, the relevant time-period for determination of eligibility for disability benefits begins on the date the application was filed. (Tr. at 10-13).

[3] On the application paperwork, Anderson alleged that R.L.B. had problems in these areas only: reflux, dysplasia, speech and language, and swallowing. (Tr. at 43, 158-159).

3

R.L.B. was not disabled for the relevant time-period of May 23, 2017 through May 1, 2019, which was the date of the ALJ's decision. *Id*.

## III. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable

4

mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d. at 477.

## B. Anderson's Arguments on Appeal

Anderson contends that the evidence supporting the ALJ's decision to deny her application for benefits is less than substantial. Anderson argues that the ALJ failed to provide sufficient detail to support his decision about functional equivalence.

Much of the 1200-page record predates the relevant time-period. The ALJ noted that R.L.B. received treatment for swallowing problems, which improved her condition. (Tr. at 14-15). Likewise, he discussed the notes from R.L.B.'s treating pediatrician that R.L.B's asthma was only moderate in severity. *Id*.

Anderson focuses her argument on R.L.B.'s emotional and behavior problems. Anderson alleged that R.L.B. threw tantrums at home, could not focus,

fought with her older brother, and disrupted her classmates in preschool.[4] (Tr. at 31-42). Medical treatment notes show otherwise. After an evaluation in 2015 for occupational therapy services, R.L.B.'s provider determined that she did not qualify for the services. (Tr. at 246). Reports from 2017 and 2018 likewise showed that she did not qualify for services. (Tr. at 1145-1150). Anderson admitted in 2017 that she had not sought behavior therapy for R.L.B. (Tr. at 1067). At various evaluations, R.L.B. attended to tasks, was easily redirected, and was cooperative and pleasant. (Tr. at 560, 961, 1069, 1145-1150).

Before the relevant time-period, in 2015, Dr. Yvonne Osborne, Ph.D., examined R.L.B. and found that she had adequate social function, high average cognitive function, and she had not received treatment for emotional or behavioral problems. (Tr. at 559-561). Dr. Osborne said R.L.B. had adequate abilities in the relevant areas of behavioral functioning. *Id*. The ALJ gave this opinion limited weight, and found instead, that R.L.B. mental impairments were severe at Step

---

[4] Anderson also testified that two teachers were able to sufficiently redirect R.L.B. and that R.L.B. liked to play with other children her own age. *Id*.

Two.[5] (Tr. at 15). This indicated he gave credit to Anderson's description of R.L.B.'s occasionally problematic behavior.[6]

One of R.L.B.'s pre-school teachers provider a checkbox statement about R.L.B. in March 2018. (Tr. at 181-188). She reported that R. L. B. had very serious problems in some, but not all, social and emotional areas. *Id*. The ALJ properly discounted this opinion: the teacher had only known and observed R.L.B. for two months, and her opinion provided little elaboration or citation to supporting evidence. (Tr. at 16-20). A conclusory checkbox form has little evidentiary value when it cites to no medical evidence and provides little or no elaboration. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012).

Additionally, the record documented no specialized ongoing mental health treatment. (Tr. at 15). While Anderson stated that medication and therapy were recommended for impulse control and conduct disorder in December 2018, Anderson declined the suggestion for medication and R.L.B. did not attend therapy. (15, 1213-1223). A parent's failure to administer medication as prescribed without

---

[5] The Disability Determination services medical experts reviewed the records and found that R.L.B.'s cognitive and behavioral problems were non-severe. (Tr. at 47-63).

[6] Anderson made the tangential argument that the ALJ did not properly consider Anderson's subjective complaints. The Court disagrees; the ALJ discussed Anderson's reports of R.L.B.'s behavior but held that they were not consistent with the evidence in the record as a whole. (Tr. at 15). Much of the medical evidence consisted of Anderson's undocumented reports of her daughter's behavioral problems. And Anderson often declined to follow the providers' recommended treatment plans. (Tr. at 1221-1224).

7

good reason can be a proper ground for denying benefits. *Blake v. Barnhart*, 28 Fed. Appx. 597, 599 (8th Cir 2002). Furthermore, R.L.B.'s providers recommended conservative treatment to Anderson, including setting a routine and a regular schedule for R.L.B., increasing exercise, and limiting her sugar intake. (Tr. at 1192-1194). The need for only conservative treatment contradicts allegations of disabling conditions. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

Based on the foregoing, the Court finds that the ALJ's findings about R.L.B.'s performance in the six functional domains at Step Three was proper, as was his ultimate determination that R.L.B. was not disabled.

## IV. **Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly analyzed and discussed R.L.B's credible limitations in the six functional domains. The finding that R.L.B. was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

ORDERED this 7th day of June, 2021.

_____
UNITED STATES MAGISTRATE JUDGE